Thank you, Your Honors. May it please the Court. I'm Jonathan Mitchell for Plaintiff Appellants, Dale Danielson et al., and we'd like to reserve five minutes for rebuttal. Property that has been taken in violation of another's constitutional rights must be returned even if the defendant took the property in good faith and even if the defendant took the property in reliance on a statute or court decision that is only later held unconstitutional. This Court can assume the existence of a good faith defense under Section 1983, and this Court can assume for the sake of argument that private defendants can assert a defense that resembles qualified immunity, consistent with the holdings of other courts of appeals that have recognized a good faith defense in Section 1983 litigation. But none of that is any help to the Union because neither qualified immunity nor good faith will ever allow a defendant to keep the money or property that he took in good faith but in violation of another's constitutional rights. Good faith can provide a defense to liability for damages that are inflicted by the collateral harms that accompany an unconstitutional but innocent taking of property, but it does not shield a defendant from a restitutionary remedy that simply asks for the innocently but wrongfully taken property to be returned. In United States against Windsor, for example, the IRS had collected taxes in good faith reliance on the Defense of Marriage Act before that statute was declared unconstitutional. The good faith would shield employees of the IRS from liability for damages if a same-sex couple were to sue for emotional distress or other harms that may have been inflicted by the unconstitutional tax collection. But under no circumstance would the good faith of the IRS allow it to keep those taxes that it had collected in reliance on a statute it believed to be constitutional but that was later pronounced unconstitutional by the Supreme Court. Those unconstitutionally collected taxes had to be returned notwithstanding the good faith of the IRS. We now have the benefit, as the parties alerted us to in the 28-J letter, of a thorough reasoned decision from the Seventh Circuit and a portion of that opinion really analyzed the nature of the constitutional harm that the Supreme Court was grappling with. And that really undercuts your restitution argument. Can you address that analysis and give us your best argument on where the error is in the reasoning of that opinion? Yes. Judge Wynn, with respect, the Seventh Circuit's opinion doesn't address the argument we're advancing before this Court. Our claim is that there's a distinction between a claim for damages that are derived from collateral harms that arise from the unconstitutional seizure of another's property and a simple request to return the money or property that was taken in good faith. Mr. Janus did not raise the argument in his brief that we are making to this Court. And the Seventh Circuit had no occasion to address this argument in the Janus opinion. Now, in candor to the Court, Ms. Mooney, who had an accompanying case alongside Mr. Janus, did raise this argument, that there's a distinction to be drawn between a restitutionary remedy and a claim for damages that arise out of other harms that may accompany the unconstitutional seizure of property. But the Seventh Circuit doesn't address any of this in the Janus opinion. In the Mooney opinion, which is a shorter five- to six-page appendum that came out the same day as Janus and which was also included in the Union's 20HA letter, the Seventh Circuit addresses this point by trying to say that the remedy that we're seeking isn't really an equitable remedy. It is, in the Seventh Circuit's view, a request for damages. Even if the Seventh Circuit's right to call this a damages claim, it does not in any way change the fact that we're seeking restitution, restitution of the money that the Union took in good faith, admittedly, in reliance on a statute, in reliance on a Supreme Court decision that at the time was believed to be constitutional, but nevertheless was taken in violation of our client's constitutional rights. And in no area of law, Judge Winn, do the courts allow a defendant who takes property or money in good faith, but in violation of another's constitutional rights, to keep that Not in Windsor, not in the search of Congressman Jefferson's office, which was done in good faith reliance on a search warrant that was later declared unconstitutional. Not in criminal law. If fines are collected in reliance on a statute that is later declared unconstitutional, the fines must be returned. Not in victim's restitution law. Even victim restitution awards that are based on statutes that are later declared unconstitutional, those have to be repaid when the person who paid the victim's restitution seeks its recovery. There's no example anywhere that we have been able to find, there's no example that the Seventh Circuit could cite, and there's no example the Union can cite, where any other defendant has been allowed My point is that the analysis laid out by that opinion really, I think, fairly incorrectly characterized the nature of the injury that the Supreme Court was talking about is a First Amendment injury. So whether it's characterized as a restitutionary claim doesn't change the fact that it's really by nature of damages that you're seeking. But even assuming it's restitution, what do you make of the fact that under pre-Janus authority of Abood, the plaintiff was a competitive employee, so it wasn't an illegal retention of money in the sense that services really weren't rendered? Yes. I think it's quite possible that our clients may have very well received some type of benefit from the Union representation, despite the fact that they paid this money unwillingly. But we don't think that should in any way affect the remedy in this case. And Judge Winn, the hypothetical I would pose is let's suppose the Union decided to ignore agency fees from our clients' paychecks. I know they haven't done that. They have complied with Janus. But if a Union were to defy Janus and continue taking agency fees, they couldn't try to defend themselves in a lawsuit for restitution by claiming that they conferred some benefit on the victims who had their money taken, even if they, in fact, had conferred such a benefit. Because the Supreme Court held in Janus that that's not sufficient justification to take money or property without the non-Union members' consent. And no different result can obtain in this situation because the Supreme Court's ruling in Janus is retroactive, based on what the Supreme Court said in Harper, that any decision issued by the Supreme Court interpreting the Constitution will have retroactive effect as long as the Supreme Court applies that constitutional rule to the parties before it, which it did in Janus. Now, to get back to your earlier question, Judge Wynn, there is some discussion at the beginning of the Seventh Circuit's opinion about the nature of the constitutional injury. And Your Honor suggests that, and I think this is the passage you're referring to, where Judge Wood says this is not a takings violation, it's a First Amendment violation. But in Harper, that doesn't change in any way the type of relief we're requesting. Money was taken in violation of the Constitution. Whether that was taken in violation of the speech clause or the takings clause or some other provision of the Constitution doesn't matter for purposes of what we're seeking. We're just asking for that money to be returned. Nothing more than that. If we were seeking damages for emotional distress, if we were seeking punitive damages, the Union would have a good-faith defense, undoubtedly, under the precedent of this Court and under the rulings from other courts of appeals. Clement is the relevant decision from this Court. This was where a car was towed in good-faith reliance on a police officer's instructions. And this Court held that the plaintiff who had her car towed could not recover damages from the towing company under Section 1983 because the towing company acted in good-faith reliance on the police officer's instructions. But under no circumstance would a towing company be allowed to keep the car that was towed, even if it acted in good faith. No one gets a windfall for violating another person's constitutional rights, even if the violation occurred in good-faith reliance on a statute or in good-faith reliance on a Supreme Court decision. The wrongfully taken property still has to be returned. Another relevant case is Wyatt v. Cole on remand to the Fifth Circuit. This is a case that the Seventh Circuit relies on heavily in establishing a good-faith defense for the first time in the Seventh Circuit. But it's crucial to note in Wyatt, the property that was seized in good-faith reliance on the Raplevin statute, the cattle and the tractor, that had to be returned. The State Court ordered the return of the cattle and the tractor. No one argued in Wyatt, and no one I think could reasonably argue, that the good-faith reliance on the Raplevin statute should not only immunize the defendant from damages, but also permit the defendant to keep the cattle and the tractor that it seized. The wrongfully taken property has to be returned, even if there's an immunity for damages for other harms that may have been afflicted while the seizure occurred. I see I'm starting to get into my rebuttal time. So if I could, I'd like to reserve the balance of my time and turn it over to Mr. Petz. I think that the panel agrees you may do that. Thank you. Good morning. May it please the Court. My name is Casey Petz, and I represent the Appellee Washington Federation of State Employees AFSCME Council 28 in this matter. Plaintiff's counsel has conceded that there is a good-faith defense to Section 1983 liability that's available to private parties in this circuit. So the only question presented here is whether that defense applies where a private party relied not only on a presumptively valid state law, but on then-binding United States Supreme Court precedent in the conduct at issue. As the District Court properly recognized, those facts present the strongest possible circumstances for application of the good-faith defense. When the unions received fair share fees to pay for their ongoing collective bargaining on behalf of all individuals in the bargaining units they represented, collective bargaining representation they had a legal obligation to provide to all members of the bargaining unit, those fees were authorized by state law and constitutional under Abood v. Detroit Board of Education. As every court to consider the issue has recognized, including the court below in this case and the Seventh Circuit yesterday in the Janus and Mooney cases, private parties cannot be held liable under Section 1983 for having followed the law in this fashion. How do you deal with this restitution argument? That's sort of the crux of what we're talking about here. That's true. And quite simply, the Seventh Circuit properly recognized in the Janus and Mooney decisions that plaintiffs here are not seeking the equitable return of property no matter what they contend before this Court. Plaintiffs are seeking a legal remedy. Namely, they're seeking damages for the violation of their First Amendment rights. As Judge Nguyen recognized, the claim here is premised on the First Amendment. It's premised on the use of plaintiffs' funds to support expressive activities with which they disagree. That is the right against compelled association and compelled speech that was recognized in Janus and that's an issue in this case. If plaintiffs' money had been taken and held by their public employer or by the union and not used in a manner that implicated their expressive activities to which they objected, there would be no First Amendment issue. But we, in this case, we are here on a First Amendment claim, not a property claim. And that's just that so they are pursuing a damages remedy for that First Amendment right. Furthermore, Would you also contend that the restitution remedy simply doesn't fit here because you cannot return the services the union provided with respect to the payments that were received? Absolutely. Absolutely. There are actually two pieces of that that I want to point out that make the claim that they're making about the relief they're seeking an opposite. The first is that the money that was paid, the fees that were paid, has already been spent. It was spent by the union in providing ongoing representation to all members of the bargaining unit. This is not a case where there is property, either intangible or tangible, that belonged to the plaintiffs that is in the defendant's possession that they're seeking to retake. The money has been spent and what they are seeking is an award of damages or money from the general assets of the This Court recognized just this term in the Depot, Inc. v. Caring for Montanans decision, and the Supreme Court has emphasized that that kind of monetary relief against a defendant's general assets is a legal remedy. It's not an equitable form of, it's not an equitable remedy of any kind. But as Your Honor points out, even if they were seeking an equitable remedy, the equities here would not support the kind of relief that they're seeking. Because for the you've pointed out, the union did provide representation to the people who are now seeking the repayment here. The union can't take that payment back. At the time, fair share fees were lawful under binding Supreme Court precedent. The union made a choice about how to allocate its cost of collective bargaining across the entire bargaining unit and did so consistent with the law at the time, and then it provided representation using those funds. The funds are gone. The in the Davis case and the Lemon II case have emphasized how important those reliance interests are in thinking about whether the equities would support relief. I think in that respect, a case that the Court could give particular attention to is the Supreme Court's decision in Ellis v. Railway clerks. That was a case about what a union under the pre-Janus Abood regime could properly charge its members for. What would be chargeable, meaning that they were germane to collective bargaining, and what would not be chargeable, meaning they weren't, and that fair share fee payers could not be required to pay for those. One of the things at issue in that case was death benefits. The union that served as exclusive representative had required all members of the bargain unit to pay a certain amount for death benefits. The plaintiffs in that case contended that that violated the Constitution and that should not have been required to pay for those benefits. The Supreme Court in the Ellis case ultimately said, we don't have to resolve this issue because the union had been decertified, so the people were no longer paying for the death benefits, just as the individuals here are no longer paying fair share fees. And the Court said, and the equities certainly would not support a remedy requiring that these people get the money they paid for those death benefits back. The Court recognized they had received those benefits and the equity would not support an order requiring their return. I want to make it clear the scope of the claim that they're making. They claim there is some freestanding principle that property, even intangible property, entirely intangible property like the funds at issue here, must always be returned. It's clear that none of the cases they cite support this sort of broad, general, universal principle. None of those cases were Section 1983 cases and none considered the scope of the remedies that are available under Section 1983. For example, they rely upon the Windsor case. But, of course, the Windsor case was a case that was brought pursuant to the proper tax refund mechanism that Congress has established for seeking a refund of taxes after their payment. Under plaintiff's position, in fact, every taxpayer who had paid increased taxes prior to the invalidation of DOMA could have, after that, gone in and brought a Section 1983 lawsuit against the United States government seeking an order requiring the return of all those payments, notwithstanding that there is an entire separate body of law that says you need to pay your taxes under a protest and go through this about the return of funds. But the cases they rely on even acknowledge that in the absence of the Tucker Act's waiver of sovereign immunity that there would not be an entitlement to the return of those funds. So the cases they're relying on simply don't support the point they're making. Even this Court's case in Clement v. City of Glendale doesn't support the point they're making. If you listen to the oral argument in that case or you read the briefing in that case, it's clear that the car at issue was never returned to the plaintiff in that case. The towing company retained the car, went to small claims court to get an authorization to sell the car to pay off the fees that had accrued as a result of its towing, and the plaintiff never got the car back. What was actually at issue was the damages resulting from their retention of the number of other arguments against application of the good faith defense. We have explained in our briefing why those arguments are without merit, and we think they're adequately addressed in the briefing and in the decisions that were issued yesterday by the Seventh Circuit in the Janus and Mooney cases. So unless the Court has other questions they would like me to address today, I will sit down. No questions. Thank you. No questions here. Thank you. Thank you. We all agree the Union took this property in good faith and in reliance on statutes and in reliance on court decisions that were at the time believed to be constitutional, but none of that can defeat our client's claims for a restitutionary remedy in this case, and nothing that Mr. Pitts has said forecloses the claim we're seeking for restitution. Mr. Pitts begins by, again, relying on what the Seventh Circuit's rationale was in the Mooney decision from yesterday by denying that we're seeking an equitable restitutionary but it doesn't matter whether this claim is characterized as legal or equitable. What matters is that we're seeking the return of property that was taken admittedly in good faith but in violation of our client's constitutional rights. A hypothetical might be, again, going back to Wyatt against Cole. The cattle and tractor that were seized under the unconstitutional or Plevin statute had to be returned. It wouldn't matter if the plaintiff who was seeking the return of the cattle and tractor called that an equitable remedy or a legal remedy, and it wouldn't matter if the cattle and the tractor had already been sold or destroyed by the defendant before the plaintiff could sue for the return. If that were to happen, the defendant would have to pay the fair market value in the same way he would have to pay in an action for conversion. Our claim doesn't depend on whether this is equitable or legal, contrary to the Seventh Circuit's suggestion from yesterday. Mr. Pitts also mentions that the money has been spent, but in all the cases that we've cited where money has been taken, that was equally true. The tax proceeds that were collected in Windsor were mingled in the U.S. Treasury and spent. Money that was taken with respect to the fines and victim's restitution awards in the cases that we cite throughout our brief, that money was spent as well. No one actually traces the specific dollar bills that were in violation of one's constitutional rights, and is the plaintiff seeking nothing more than the return of that property rather than additional damages? I'm not sure I understand your argument that it makes no difference to characterize the remedy as legal or equitable. If it is a remedy that's sought pursuant to equitable principles, then how would it be equitable to now order the return of the funds? The reason it would be equitable is because the Supreme Court held in Janus that it was unconstitutional for this money to be taken in the first place. Certainly under Abood, it would seem inequitable because Abood approved the idea of forced payment in return for union representation. Once Janus held that that system was unconstitutional, and because the holding of Janus is retroactive, that defeats any equitable objection to the remedy because the Supreme Court, in its holding in Janus, had said that not only was the prior regime inequitable, it was actually a violation of the First Amendment. Perhaps the Supreme Court was wrong to reach the holding that it did in Janus. It was a 5-4 decision. It was of strong dissent by Justice Kagan. But given the holding of Janus, and also given the retroactive requirement from Harper that Janus has to be given retroactive effect, and courts must act as though the First Amendment has always imposed this requirement, it's logically incompatible with Janus to then say it's inequitable to have a refund remedy for money that the union should not have been allowed to take in the first place. And Mr. Pitt cited Ellis during his argument, but Ellis was litigated, as he admitted, in a pre-Janus regime when Abood was still the governing precedent. So of course, it was logical for the Supreme Court to say in despite the compulsory payment, and it would be inequitable to order a refund. All of that makes perfect sense when Abood is the governing precedent. Mr. Mitchell, one second. I see the clock hasn't been running. The clock wasn't running. I'm sorry. I wasn't really keeping track. So how much time do you need for you? Whatever the court needs. And I probably have used the four minutes that I had. I wasn't counting. But if the court has no further questions, we're... Let's see. Are there questions? I don't have any further questions. Thank you, counsel. Thank you. There's no questions here. Okay. Thank you, Your Honors. Thank you. Well, I'm going to again thank counsel for both sides for their spirited and excellent advocacy. We appreciate that. Also, thank you both for traveling here to educate us. So the Danielson case shall be submitted and the court will adjourn for the day.
judges: Gould, Nguyen, Presnell